```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ST. FRANCIS HOSPITAL,

                    Plaintiff,
                                                              MEMORANDUM & ORDER
            - against -                                       09 CV 1528 (DRH)(AKT)

KATHLEEN SEBELIUS, in her capacity as
Secretary, United States Department of
Health and Human Services,

                    Defendant.
----------------------------------------------------------X
```

**APPEARANCES:**

**Duane Morris**
Attorneys for Plaintiff
111 S. Calvert Street, Suite 2000
Baltimore, Maryland 21202
By:   Ray M. Shepard
      Susan V. Kayser

**United States Attorney's Office**
Attorneys for Defendant
610 Federal Plaza, Fifth Floor
Central Islip, New York 11722
By:   Robert B. Kambic

**HURLEY, District Judge:**

       Plaintiff brings this action for judicial review of certain administrative determinations issued by defendant in her capacity as Secretary of Health and Human Services, which resulted in the recoupment of approximately $1.2 million in Medicare reimbursements from plaintiff. Presently before the Court is defendant's motion to dismiss the complaint pursuant to Fed. R.

Civ. P. 12(b)(1) for lack of subject matter jurisdiction. For the reasons stated below, defendant's motion is denied.

## BACKGROUND

Plaintiff, a hospital located in Roslyn, New York, regularly obtains reimbursement under Part A[1] of the Medicare program from the U.S. Department of Health and Human Services ("HHS") for services rendered to Medicare beneficiaries. (Compl. ¶ 8.) Under Agency regulations, the reimbursement process starts with an "initial determination" by a private "fiscal intermediary" regarding the coverage and payment of a particular claim. (Compl. ¶¶ 14-17 (citing 42 U.S.C. § 1395h; 42 C.F.R. §§ 405.704(b), 405.924(b)).) In this case, the fiscal intermediary, Empire Medical Services ("Empire"),[2] determined from 2002 to 2004 that a number of reimbursement claims at issue in this action were covered and payable to plaintiff under Medicare Part A.

As part of an experimental demonstration project authorized by the Medicare Prescription Drug, Improvement and Modernization Act of 2003, HHS engaged the services of recovery audit contractors ("RACs") to identify underpayments and overpayments made to Medicare service providers. (Compl. ¶ 37.) The RACs were offered a percentage of each overpayment that it identified and which was later recovered by the Agency. Under this project, Connolly Consulting, an RAC, informed plaintiff that it had identified a total of 225 reimbursement claims previously paid to plaintiff that were subject to overpayment. (Compl. ¶ 54.) The RAC then forwarded these purportedly overpaid claims to Empire, the original fiscal intermediary, for reconsideration. (*Id.* ¶ 55.)

---

[1] Part A of the Medicare program covers reimbursements for inpatient hospital services. (Compl. ¶ 11.)
[2] Empire Medical Services has since been renamed "National Government Services." (Compl. ¶ 18.)

This referral triggered a multi-step review process, beginning with Empire's decision whether or not to reopen a claim for further consideration.[3] Empire chose to reopen all 225 claims identified by the RAC, and later issued "revised reimbursements," resulting in a substantial recoupment to HHS for overpayments to plaintiff. (Compl. ¶ 55.) Plaintiff then entered a four-layer appeal process. The first appeal is made to the fiscal intermediary (Empire), the second to a "Qualified Independent Contractor," the third to an Administrative Law Judge for a hearing and decision, and the fourth to the Medicare Appeals Council ("MAC"). 42 C.F.R. §§ 405.904(b), 405.984; 42 U.S.C. §§ 405g, 1395ff.

Plaintiff took advantage of this administrative appeals process to an extent. Through those efforts, 104 of the original 225 overpayment claims at issue were overturned in plaintiff's favor, 18 went as far as the MAC, 15 are pending before an Administrative Law Judge, and the remaining claims were abandoned by plaintiff at various stages in the appeals process. In the present action, plaintiff does not challenge the Agency's determinations on the merits of the reimbursement claims. Rather, plaintiff alleges that there is no mechanism within the administrative appeals process to challenge the propriety of Empire reopening these claims in the first instance.

Under agency regulations, a reimbursement claim may be reopened either within one year of the initial determination without cause, or within four years of the initial determination with cause.[4] (Compl. ¶ 25 (citing 42 C.F.R. § 405.980(b)).) Plaintiff claims that none of the claims were reopened within a year of the initial determination, and that in some cases they were reopened more than four years after the fact. (*Id.* ¶ 56.) And, in no event, plaintiff alleges, was

---

[3] HHS is empowered with the authority under 42 U.S.C. § 1395ff(b) to reopen an initial determination. Through Agency regulations, HHS delegated this power to the fiscal intermediary who initially processed the claim at issue. See 42 C.F.R. 405.980.
[4] A claim may also be reopened under the same regulation at any time where there exists reliable evidence of fraud or where a clerical error has occurred. Neither is at issue in this case. (Compl. ¶ 67.)

good cause ever shown. (*Id.* ¶¶ 57-60.) According to plaintiff, in order to show such cause, Empire and the RAC must cite "new and material evidence," or establish that "reopening was necessary to correct an obvious facial error made at the time of the initial determination to pay the claims." (*Id.* ¶ 59, 68 (citing 42 C.F.R. 405.986).) No new evidence was available at the time of reopening that was not previously available at the time of the initial determination. (*Id.* ¶ 69.)

However, under 42 C.F.R. § 405.926(*l*), "[a] contractor's . . . decision to reopen or not to reopen an initial determination" is not appealable. Therefore, plaintiff was unable to challenge the untimely reopening of a Medicare reimbursement claim at the administrative level, resulting in a substantial monetary loss through recoupment, and allegedly depriving plaintiff of its due process rights.

Plaintiff brings four causes of action to remedy its alleged deprivation: (1) that defendant violated the Medicare statute and regulations governing the timing of reopening decisions, (2) that defendant denied plaintiff's Fifth Amendment right to due process (3) that regulation 42 C.F.R. § 405.926(*l*) is inconsistent with the mandates of 42 U.S.C. § 1395ff(b)(1)(A), in that it does not provide an administrative review mechanism to challenge the act of reopening a particular Medicare claim, and (4) that defendant's regulation shielding decisions to reopen a claim from administrative review is arbitrary, capricious, and an abuse of the Agency's discretion, and should therefore be invalidated pursuant to 5 U.S.C. § 706(2) of the Administrative Procedures Act.

Defendant brings this motion to dismiss, arguing that the Court lacks subject matter jurisdiction to hear this claim.

# DISCUSSION

## I. STANDARD OF REVIEW

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.'" *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Makarova*, 201 F.3d at 113); *see also Tomaino v. United States*, 2010 U.S. Dist. LEXIS 24980, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "On a Rule 12(b)(1) motion, the court may consider matters outside the pleadings, including affidavits, documents, and testimony if necessary." *Tsanganea v. City Univ. of N.Y.*, 2008 U.S. Dist. LEXIS 66236, 2008 WL 4054426, at *3 (S.D.N.Y. Aug. 28, 2008) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

## II. JURISDICTION UNDER THE MEDICARE ACT

The Complaint cites 42 U.S.C. §§ 405(g) and 1395ff(b)(1)(A) of the Medicare Act as the basis for federal subject matter jurisdiction over this case. (Compl. ¶ 4.) Section 1395ff(b)(1)(A) incorporates the judicial review provisions of section 405(g) of the Social Security Act, which empowers federal district courts to review administrative decisions only where there has been a "final decision . . . made after a hearing." 42 U.S.C. § 405(g); *see also Pavano v. Shalala*, 95

F.3d 147, 150 (2d Cir. 1996)("[A] federal court may review a Medicare determination . . . only where a claimant has obtained a final agency decision.").

Defendant argues that this Court cannot presently take up this matter because plaintiff has failed to meet this threshold requirement of obtaining a final administrative decision following a hearing. (D's Br. at 8-10.) As noted above, of the remaining claims that have not otherwise been overturned in plaintiff's favor, or abandoned by plaintiff, 15 are, as of the time of the filing of the pleading, "pending disposition at the ALJ level," (compl. ¶¶ 61-62), and 18 were dismissed by the MAC following a determination that plaintiff did not timely request a hearing before an ALJ, (compl. Ex. E). Notably, plaintiff raised the issue of the propriety of reopening the claims before the MAC, which denied review as it was "a substantive issue that had not been presented to the ALJ at a hearing." (Compl. Ex. E.) Defendant further contends that the MAC's review of the ALJ's refusal to allow an untimely hearing does not amount to a "final decision" following a hearing as it is defined in the statute. (D's Br. at 9 (citing *inter alia Dietsch v. Schweiker*, 700 F.2d 865, 867 (2d Cir. 1983)).) Moreover, defendant urges, even if the administrative determinations were reviewable here, the Court's review would be limited to issues raised and decided below, which does not include the question of reopening the claims in the first place. (D's Br. at 10.)

Plaintiff does not object to defendant's assertion that it has not obtained a "final decision," but nevertheless argues that this Court should exercise jurisdiction under the Medicare Act by waiving the administrative exhaustion requirement. (P's Opp. at 3.)

"The 'final decision' requirement has two elements, one which is waivable and one which is non-waivable. The waivable element is the requirement that the administrative remedies prescribed by the Secretary be exhausted. The non-waivable element is the requirement

6

that a claim for benefits shall have been presented to the Secretary." *Long Island Ambulance, Inc. v. Thompson*, 220 F. Supp. 2d 150, 160 (E.D.N.Y. 2002)(citing and quoting *Mathews v. Eldridge*, 424 U.S. 319, 327 (1976), and *Abbey v. Sullivan*, 978 F.2d 37, 43 (2d Cir. 1992))(internal quotes omitted). Here, there is no dispute that plaintiff satisfied the non-waivable jurisdictional element by initiating the administrative appeals process regarding the overpayment determinations.[5] *See Heckler v. Lopez*, 464 U.S. 879, 882 (1983)(holding that all a claimant must do to satisfy the presentment requirement is to "specifically present[] the claim that his benefits should not be terminated").

As to the waivable element, which requires exhaustion of administrative remedies prior to judicial review, the parties also do not dispute that plaintiff has failed to obtain a final Agency decision regarding the propriety of reopening its claims. In determining whether the exhaustion requirement should be waived, courts consider the following factors: (1) whether requiring the plaintiff to administratively exhaust its claim would be "futile"; (2) whether the judicial claim is "collateral" to the administrative claim for benefits; and (3) whether the plaintiff would suffer irreparable harm if required to exhaust administrative remedies. *Pavano*, 95 F.3d at 150 (citing *Abbey*, 978 F.2d at 44); *see also Bowen v. City of New York*, 476 U.S. 467, 483 (1986); *Eldridge*, 424 U.S. at 330-32. However, "exhaustion is the rule, waiver the exception," and "[g]iving the agency first crack at correcting its own errors also conserves judicial resources." *Abbey*, 978 F.2d at 44-45. "[N]o one element is critical to the resolution of the [exhaustion] issue; rather, a more general approach, balancing the competing considerations to arrive at a just result, is in order." *Pavano*, 95 F.3d at 151 (citing *New York v. Sullivan*, 906 F.2d 910, 918 (2d Cir. 1990)).

---

[5] Indeed, defendant's memorandum of law does not address the non-waivable element at all, focusing solely on the waivable exhaustion requirement. (D's Br. at 10-14.)

### a. *Futility*

Plaintiff contends that awaiting a final decision from HHS would prove futile because "the issue presented is one the Secretary lacks either jurisdiction or the desire to consider in the course of the administrative process." (P's Opp. at 5.) Plaintiff's arguments recognize that the policy of requiring administrative exhaustion prior to judicial review "prevent[s] premature interference with agency processes . . . so that it may have an opportunity to correct its own areas." (*Id*. (quoting *Abbey*, 978 F.2d at 44).) However, plaintiff argues, such policy considerations are "chimerical when the challenge is to regulations promulgated and consistently enforced by the agency, and which the agency has either no power, or no inclination, to correct." (*Id.* (quoting *Abbey*, 978 F.2d at 45).)

The particular issue here, *viz.*, the propriety of the reopening of plaintiff's reimbursement claims, is indeed not administratively reviewable. Under Medicare regulations, a "contractor's, QIC's, ALJ's, or MAC's determination or decision to reopen or not to reopen an initial determination, redetermination, reconsideration, hearing decision, or review decision," are not considered "initial determinations" and are not administratively appealable. 42 C.F.R. § 405.926(*l*). Likewise, a separate regulation provides that "[t]he contractor's, QIC's, ALJ's, or MAC's decision on whether to reopen is binding and not subject to appeal." 42 C.F.R. §§405.980(a)(5). Pursuant to these regulations, the MAC has, on at least three occasions in

other cases,[6] ruled that an ALJ and the MAC is without jurisdiction to review a contractor's decision to reopen a claim.[7] One of those decisions states in relevant part as follows:

> The Appellant is expressly asking that the ALJ and [MAC] 'review a contractor's decision to reopen an initial determination.' The regulation at 42 C.F.R. § 405.926(*l*) forbids this. The appellant's position contradicts the specific language of the regulation and the intent expressed in the preamble to the final rule that reopenings 'continue to be discretionary actions on the part of contractors . . . not subject to appeal.
>
> . . . This lack of jurisdiction extends to whether or not the contractor met good cause standards for reopening set forth in 42 C.F.R. §§ 405.980(b)(2). The [Centers for Medicare and Medicaid Services ("CMS")] has expressly stated that the enforcement mechanism for good cause standards lies within CMS's evaluation and monitoring of contractor performance, not the administrative appeals process. An appellant's due process rights are preserved by the ability to appeal the merits of revised determination.

*In re Providence St. Joseph Medical Ctr.*, Order of the Medicare Appeals Council (July 23, 2008)(attached to the Complaint as Exhibit A-3).

Defendant counters that administrative exhaustion would not be futile, but rather would "fully advance the policies underlying the exhaustion requirement." (D's Br. at 11.) In particular, requiring plaintiff to exhaust "may, as in this case, enable the agency to resolve the case on non-constitutional grounds." (*Id.* at 12 (quoting *Abbey*, 978 F.2d at 45)); *see Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 24 (2000)("Proceeding through the agency . . . provides the agency the opportunity to reconsider its policies, interpretations, and regulations in light of those challenges."). As defendant notes, plaintiff has 15 claims pending before an

---

[6] Plaintiff attaches copies of three such decisions by the MAC to its Complaint. Generally, MAC decisions are not published.

[7] Plaintiff further suggests that when it presented this same issue to the MAC in its own administrative appeal, "the Council refused to consider the issue." (P's Opp. at 6.) This assertion is somewhat misleading, as the MAC declined to take up the issue in that instance not because of the jurisdictional issues addressed above, but because plaintiff had failed to raise the issue timely before an ALJ. (Compl. Ex. E at 3.)

ALJ, wherein it could ultimately prevail. Defendant further argues that exhaustion would allow the agency to compile a complete record of the proceedings to aid judicial review.

However, the narrow issue before the Court pertains to the lack of process available to challenge reopening decisions through an administrative appeal. HHS regulations, in addition to the MAC opinions furnished by plaintiff, demonstrate that the propriety of reopening a claim is not an issue that the agency is willing to review on appeal. The Court recognizes that MAC opinions do not serve as precedent for other decisions by the MAC, and that it is therefore possible for the Council to rule differently. Nevertheless, their determinations are based on straightforward language contained within agency regulations which reflect an established policy not to subject the reopening decisions of its contractors to review. As the Supreme Court held in *Eldridge*, and as is true here, "[i]t is unrealistic to expect that the Secretary would consider substantial changes in the current administrative review system at the behest of a single [claimant] raising a constitutional challenge in an adjudicatory context." 424 U.S. at 330. Likewise, the Second Circuit has recognized futility in cases where the claim asserted on judicial review would not benefit "from further factual development or from the agency's experience and expertise" or where waiving exhaustion would not "prevent premature interference with agency processes." *See New York v. Heckler*, 742 F.2d 729, 737 (2d Cir. 1984); *see also Ellis v. Blum*, 643 F.2d 68, 78 (2d Cir. 1981)("[I]t would be foolish to expect the Secretary in an adjudicatory administrative proceeding to take steps to remedy what plaintiff alleges to be a full-blown policy."). Furthermore, much of plaintiff's claims here hinge on questions of constitutional due process, and the constitutionality of a statute or regulation is generally considered "a matter [ ] beyond [the Secretary's] jurisdiction to determine." *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975); *see also Califano v. Sanders*, 430 U.S. 99, 109 (1977)("Constitutional questions

obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions.").

Accordingly, holding plaintiff to the administrative exhaustion requirement in this instance would prove futile.

### b. *Collateral Issues*

Plaintiff's present case is also collateral to its demand for benefits. Plaintiff here is challenging the "validity of agency regulations," rather than "the application of regulations." *See Pavano*, 95 F.3d at 150. Whereas, the Agency's "mere deviation from the applicable regulations . . . [is] fully correctable upon subsequent administrative review," *City of New York*, 476 U.S. at 484-85, the validity of the regulations and procedures themselves is a different matter. In essence, the merits of the redetermination below are not at issue, but rather the purported lack of appellate remedies available to address a decision to reopen a claim. The two are not inextricably intertwined in this case. Clearly this is not the case where the plaintiff is "challenging the application of concededly valid regulations." *Abbey*, 978 F.2d at 45. On the contrary, plaintiff here is arguing that the Secretary closely follows such regulations.

Defendant, however, argues that the issue presented here cannot be considered collateral because it is "outcome determinative." (D's Reply at 7.) In other words, defendant urges, if plaintiff prevails on the claims before this Court, the overpayment determinations below will necessarily be reversed. In support, defendant distinguishes this case from *Eldridge* where the judicial determination did not have an automatic effect on the benefits claim itself, but on the timing of the claimants hearing. (D's Reply at 7.) Although such a distinction may exist in the present circumstances, defendant provides no authority for the broader proposition that issues

must not be "outcome determinative" to be considered collateral. Moreover, it is not entirely clear why success here would necessarily lead to a reversal below. One of the alternative forms of relief requested by plaintiff in its complaint is a directive remanding the matter to HHS "with instructions directing the Secretary to comply with its own regulations for reopenings, subject to the further review of this Court through the normal administrative appeals process." (Compl. at 18-19.) Success on the merits is by no means assured in that scenario, particularly where the agency is to determine whether good cause existed for reopening the claims.

### c. *Irreparable Harm*

Finally, plaintiff has alleged a sufficient irreparable harm to pass muster under the final element of waiver. The alleged facts make a plausible claim that plaintiff has suffered a deprivation of its Fifth Amendment due process rights. Generally, in this Circuit, a constitutional deprivation constitutes per se irreparable harm. *See Covino v. Patrissi*, 967 F.2d 73, 77 (2d Cir. 1992)(discussing irreparable harm in the context of preliminary injunctions); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)(same).

Accordingly, as a judicial waiver of the administrative exhaustion requirement is appropriate in this case, the Court has subject matter jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g) and 1395ff(b)(1)(A).

### III. SECTION 1331 AND MANDAMUS JURISDICTION

As it has been determined *supra* that subject matter jurisdiction exists under the Medicare Act, the Court need not determine whether jurisdiction also exists under the two other bases

identified by the parties: federal question jurisdiction under 28 U.S.C. § 1331, and mandamus jurisdiction under 28 U.S.C. § 1361.

## CONCLUSION

For the above-stated reasons, the Court has subject matter jurisdiction to hear this case, and defendant's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is therefore denied. This action is respectfully referred to the Honorable A. Kathleen Tomlinson for discovery and pretrial supervision.

SO ORDERED.

Dated: Central Islip, New York
June 5, 2012

/s/
Denis R. Hurley
Unites States District Judge