UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ST. FRANCIS HOSPITAL,

                Plaintiff,

         - against -

KATHLEEN SEBELIUS, in her official capacity
as Secretary, United States Department of
Health and Human Services,

                Defendant.

--------------------------------------------------------X

**MEMORANDUM & ORDER
09 CV 1528 (DRH)(AKT)**

**APPEARANCES:**

**VERRILL DANA, LLP**
Attorneys for Plaintiff
One Portland Square
P.O. Box 586
Portland, ME 04112-0586
By:    Rachel Wertheimer, Esq.

**LORETTA E. LYNCH
UNITED STATES ATTORNEY**
Eastern District of New York
Attorney for Defendant
610 Federal Plaza, Fifth Floor
Central Islip, New York 11722
By:    Robert B. Kambic, Esq.

**HURLEY, Senior District Judge:**

      Plaintiff, St. Francis Hospital ("St. Francis" or "Plaintiff"), brings this action for judicial

review of certain administrative determinations issued by defendant in her official capacity as

Secretary of Health and Human Services (the "Secretary"), which resulted in the recoupment of

approximately $1.2 million in Medicare reimbursements from Plaintiff.  Presently before the

Court is the Secretary's second motion to dismiss the complaint pursuant to Federal Rules of

Civil Procedure ("Rule") 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction, or in the

alternative, for judgment on the pleadings pursuant to Rule 12(c). For the reasons stated below, the Secretary's motion for judgment on the pleadings is granted.

## BACKGROUND

The background of this case is fully set forth in the Court's June 5, 2012 Memorandum and Order ("June 2012 Order"), familiarity with which is assumed. The Secretary presently asserts that while 15 of Plaintiff's 225 claims were pending administrative appeal when the Complaint was filed and at the time the Court issued its June 2012 Order, those 15 claims have since been overturned in Plaintiff's favor. As a result, none of Plaintiff's 225 claims are pending administrative review.

## DISCUSSION

### I.     *Motion to Dismiss for Lack of Subject Matter Jurisdiction: Legal Standard*

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *Mac Pherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "On a Rule 12(b)(1) motion, the court may consider matters outside the pleadings, including affidavits, documents, and testimony if necessary." *Tsanganea v. City Univ. of N.Y.*, 2008 WL 4054426, at *3 (S.D.N.Y. Aug. 28, 2008) (citing *Kamen v. Am. Tel. & Tel. Co.*, 791

F.2d 1006, 1011 (2d Cir. 1986)), *report and recommendation adopted*, 2008 WL 4548857 (S.D.N.Y. Oct. 8, 2008).

### A. *Jurisdiction Under the Medicare Act*

The Complaint cites 42 U.S.C. §§ 405(g) and 1395ff(b)(1)(A) of the Medicare Act as a basis for federal subject matter jurisdiction to hear this case. (Compl. ¶ 4.) Section 1395ff(b)(1)(A) incorporates the judicial review provisions of section 405(g) of the Social Security Act, which empowers federal district courts to review administrative decisions only where there has been a "final decision . . . made after a hearing." 42 U.S.C. § 405(g); *see also Pavano v. Shalala*, 95 F.3d 147, 150 (2d Cir. 1996) ("[A] federal court may review a Medicare determination . . . only where a claimant has obtained a final agency decision.").

The Secretary argued upon her first motion to dismiss under Rule 12(b)(1) that the Court lacked subject matter jurisdiction to hear Plaintiff's claims because Plaintiff had failed to obtain a final administrative decision following a hearing, as required by 42 U.S.C. § 405(g). (*See* June 2012 Order at 6.) In opposition, Plaintiff argued that the "Court should exercise jurisdiction under the Medicare Act by waiving the administrative exhaustion requirement." (*Id.*) The Court held in its June 2012 Order that "judicial waiver of the administrative exhaustion requirement [wa]s appropriate in this case," and, accordingly, determined that it had subject matter jurisdiction over this case. (*Id.* at 12.)

However, the Secretary now argues that, since "there no longer are any claims for which exhaustion of administrative remedies could be waived, . . . the Medicare statute cannot support jurisdiction." (Def.'s Mem. at 1.)[1] The Secretary is mistaken. The Court's determination that it had subject matter jurisdiction under the Medicare Act to review all of Plaintiff's claims without

---

[1] The Secretary also points out that the Court may review subject matter jurisdiction at any time. (Def.'s Mem. at 8 (citing Fed. R. Civ. P. 12(h)(3)).)

first requiring Plaintiff to exhaust all administrative remedies was premised, *inter alia*, upon the fact that exhaustion of administrative remedies would be futile because of the agency's apparent unwillingness to review challenges to reopenings upon appeal. (*See* June 2012 Order at 10.) Nowhere in the June 2012 Order did the Court limit its decision to the 15 claims pending disposition by the Administrative Law Judge.

The Secretary cites *Dietsch v. Schweiker*, 700 F.2d 865, 867 (2d Cir. 1983) for the proposition that "the dismissal of a hearing request for untimely filing . . . is [not] reviewable under the Medicare Act because there is no final decision of the Secretary made after a hearing." (Def.'s Mem. at 9 (citations and internal quotation marks omitted).) However, *Dietsch* also recognizes that, "[i]n certain limited circumstances, . . . federal courts have taken jurisdiction of social security cases where the exhaustion requirement has not been met," because the constitutional challenges asserted were beyond the Secretary's "competence to decide." 700 F.2d at 867-68 (citations and internal quotation marks omitted). Indeed, "the Supreme Court held it could review a plaintiff's constitutional challenge to a denial of a pretermination hearing although the claim had not been presented to the Secretary." *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 330-32 (1976)). Thus, as the Court recognized in its June 2012 Order, "much of [P]laintiff's claims here hinge on questions of constitutional due process, and the constitutionality of a statute or regulation is generally considered 'a matter [ ] beyond [the Secretary's] jurisdiction to determine.' " (June 2012 Order at 10 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975).)

Assuming *arguendo* that the Court does not have subject matter jurisdiction under the Medicare Act to hear Plaintiff's claims, the Court nevertheless has federal question jurisdiction to hear Plaintiff's challenges to the validity of the reopening regulations, as discussed below.

## B.    *Federal Question Jurisdiction*

The Complaint also alleges that the Court has federal question jurisdiction under 28 U.S.C. § 1331.  (Compl. ¶ 5.)  "Federal question jurisdiction provides district courts with jurisdiction of all civil actions 'arising under the Constitution, laws, or treaties of the United States.' "  *Ameropan Oil Corp. v. Wittich*, 2006 WL 1582150, at *2 (E.D.N.Y. June 5, 2006) (quoting 28 U.S.C. § 1331).  According to Plaintiff, two federal questions exist in this case, namely, "(i) whether the intermediary's decision to reopen the 225 claims was unlawful/invalid under the Medicare Act and regulations (42 U.S.C. § 1395ff, 42 C.F.R. [§] 405.980(b)); and (2) whether the review-insulating regulation (42 C.F.R. [§] 405.980(a)(5)) is constitutional."[2,3] (Pl.'s Mem. in Opp'n at 10.)

The Secretary opposes this basis of subject matter jurisdiction, arguing that 42 U.S.C. § 405(h), which is incorporated in the Medicare Act by 42 U.S.C. § 1395ii, expressly bars federal question jurisdiction over "any claim arising under" the Medicare Act, including "all of Plaintiff's allegations and claims."  (Def.'s Mem. at 12; Def.'s Reply at 4.)  Section 405(h) provides:

> Finality of Commissioner's decision
>
> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

---

[2] The fiscal intermediary contractor is referred to as both the "intermediary" and the "contractor".

[3] In addition to 42 C.F.R. § 405.980(a)(5), the Complaint asserts that 42 C.F.R. § 405.926(l) is invalid. (*See* Compl. ¶ 84.)

The Secretary also cites *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449

(1999), in which the Supreme Court denied review of a contractor's refusal to reopen on the basis

of a lack of subject matter jurisdiction, reasoning that the "[p]etitioner's claim ar[ose] under the

Medicare Act within the meaning of [section 405(h)] because both the standing and the

substantive basis for the presentation of the claim [we]re the Medicare Act." *Id.* at 456 (citation

and internal quotation marks omitted).

In response, Plaintiff argues that the Supreme Court's decisions in *Shalala v. Ill. Council*

*on Long Term Care, Inc.*, 529 U.S. 1, 19 (2000) and *Bowen v. Mich. Acad. of Family Physicians*,

476 U.S. 667, 680 (1986), establish that 42 U.S.C. § 405(h) does not bar federal question

jurisdiction over claims that arise under the Medicare Act where judicial review would be

completely precluded by application of the jurisdictional bar. (Pl.'s Mem. in Opp'n at 10-11.)

According to Plaintiff, "[t]his case falls within the exception created by *Michigan Academy* and

recognized in *Illinois Council*," because 42 C.F.R. § 405.980(a)(5), which provides that "[t]he

contractor's, QIC's, ALJ's, or MAC's decision on whether to reopen is binding and not subject

to appeal," precludes judicial review, and, thus, application of 42 U.S.C. § 405(h)'s bar to federal

question jurisdiction would place Plaintiff's federal questions completely beyond review. (Pl.'s

Mem. in Opp'n at 11.)

At this juncture, it is important to distinguish between the two types of federal question

claims that Plaintiff asserts. Plaintiff first asserts that the intermediary's decision to reopen the

225 claims was unlawful under the Medicare Act and its regulations. Since, as discussed above,

the Supreme Court in *Your Home* determined that judicial review of a decision not to reopen is

barred by section 405(h), it would seemingly follow that judicial review of a decision to reopen

is barred by section 405(h), and Plaintiff does not present any argument that convinces the Court

to the contrary. Although Plaintiff attempts to distinguish *Your Home* from the present case by stating that the Secretary's refusal to reopen in *Your Home* was a discretionary act, and that the refusal to reopen was the type of "administrative *in*activity [that is] traditionally immune from judicial review," whereas, in this case, the Secretary was active, and "her activity violated a regulation," "harm[ing] St. Francis," such that the Secretary's activity should not be beyond review, (Pl.'s Mem. in Opp'n at 11), Plaintiff misconstrues the Court's reasoning on that point. There, the Court acknowledged "the traditional rule of administrative law that an agency's refusal to reopen a closed case is generally committed to agency discretion by law and therefore exempt from judicial review." *Your Home*, 525 U.S. at 455 (citation and internal quotation marks omitted). Thus, the Court's reasoning was based upon the general notion that administrative review of an agency's discretionary act is ordinarily not subject to judicial review, rather than that administrative review was not required because the Secretary was inactive as compared to active.

Despite the Supreme Court's decision in *Your Home*, Plaintiff argues that section 405(h) does not bar federal question jurisdiction over its claims based upon the exception created by *Michigan Academy*, and recognized in *Illinois Council*, as discussed *supra*. Ostensibly, it would appear that, because Plaintiff's claim is barred by 42 C.F.R. § 405.980(a)(5), which provides that decisions on whether to reopen are binding and not appealable, Plaintiff correctly asserts that the Court should not apply section 405(h)'s jurisdictional bar since it would completely foreclose judicial review of its claims. However, a careful review of the Supreme Court's reasoning in *Illinois Council* and *Michigan Academy* demonstrates why Plaintiff's argument is incorrect.

The issue before the Supreme Court in *Michigan Academy* was whether "Congress ha[d] forbidden judicial review of all questions affecting the amount of benefits payable under Part B

of the Medicare program." 476 U.S. at 669. In that case, the Secretary argued, *inter alia*, that administrative or judicial review of any action taken under Part B of the Medicare program was expressly precluded by section 405(h) unless review was otherwise permitted by the Medicare statute. *Id.* at 673. However, the Court rejected the Secretary's argument, reasoning that it was "implausible to think [that Congress] intended that there be *no* forum to adjudicate statutory and constitutional challenges to regulations promulgated by the Secretary." *Id.* at 678. Importantly, the Court began its analysis by noting that there is a "strong presumption that Congress intends judicial review of administrative action," and that "judicial review of a final agency action by an aggrieved person will not be cut off unless there is persuasive reason to believe that such was the purpose of Congress." *Id.* at 670 (citation and internal quotation marks omitted). The Court then "discussed the statute's total silence about review of 'challenges mounted against the *method* by which . . . amounts are to be determined,' " *Ill. Council*, 529 U.S. at 16 (quoting *Mich. Acad.*, 476 U.S. at 675), and held that "the silence did not itself foreclose other forms of review, say, review in a court action brought under § 1331." *Id.* (citing *Mich. Acad.*, 476 U.S. at 674-78).

In this case, unlike *Michigan Academy* where there was statutory and regulatory silence regarding judicial review, 42 C.F.R. § 405.980(a)(5) expressly prohibits judicial review of any challenge to a decision to reopen.[4] Although 42 C.F.R. § 405.980(a)(5) was promulgated by the Secretary rather than Congress, "Congress left a 'gap' for the Secretary to fill and the Secretary, in turn and with the authority granted by Congress, promulgated regulations to carry out the Medicare program, specifically concerning reopening claims[, i.e., ] 42 U.S.C. §§ 1395ff(a)(1), 1395ff(b)(1)(G), 1395hh(a)." *Morton Plant Hosp. Ass'n, Inc. v. Sebelius*, 747 F. Supp. 2d 1349, 1356 (M.D. Fla. 2010). Thus, based upon the fact that "Congress delegated authority regarding

---

[4] In addition, 42 C.F.R. § 405.926(l) provides that "[a] contractor's, QIC's, ALJ's, or MAC's determination or decision to reopen or not to reopen an initial determination" is not appealable.

reopening claims to the Secretary," *Morton*, 747 F. Supp. 2d at 1358,[5] and the Supreme Court's

decision in *Your Home*, 525 U.S. at 456, finding that judicial review of a refusal to reopen is

barred by Section 405(h), this Court finds that judicial review under section 1331 of Plaintiff's

claim challenging the intermediary's decision to reopen the 225 claims is barred by section

405(h).

However, Plaintiff's second federal question claim fares differently.  Were the Court to

apply the jurisdictional bar of 42 U.S.C. § 405(h) to Plaintiff's claim challenging the

constitutionality of 42 C.F.R. § 405.980(a)(5) and 42 C.F.R. § 405.926(l), Plaintiff's claim would

be placed beyond judicial review.  Significantly, moreover, this particular claim is not expressly

barred by 42 C.F.R. § 405.980(a)(5) as it does not challenge the actual decision to reopen, but

rather challenges the constitutionality of regulations 42 C.F.R. §§ 405.980(a)(5) and 405.926(l).

Consequently, there is no specific evidence that Congress (or the Secretary) intended to foreclose

judicial review of this type of claim.  *See Mich. Acad.*, 476 U.S. at 680 (finding that "[t]he

legislative history of both the statute establishing the Medicare program and the 1972

amendments thereto provides specific evidence of Congress' intent to foreclose review *only* of

'amount determinations' " (emphasis added)).[6]  Moreover, it is well-settled that "[c]onstitutional

questions . . . are unsuited to resolution in administrative hearing procedures and, therefore,

---

5 *See* 42 U.S.C. § 1395ff(b)(1)(G) ("The Secretary may reopen or revise any initial determination or reconsidered determination described in this subsection under guidelines established by the Secretary in regulations.").

6 The Court notes the confusion caused by the numerous varying, and, in some cases, seemingly inconsistent positions taken by the Supreme Court regarding the availability of federal question jurisdiction to review claims challenging the Secretary's regulations and actions.  *Compare Your Home*, 525 U.S. at 456 (finding that "judicial review under the federal-question statute, 28 U.S.C. § 1331, [of an intermediary's refusal to reopen,] is precluded by 42 U.S.C. § 405(h)"), *and Salfi*, 422 U.S. at 761 (finding that "[section] 405(h) precludes resort to federal-question jurisdiction for the adjudication of . . . constitutional contentions"), *with Mich. Acad.*, 476 U.S. at 680 (finding that Congress intended "to foreclose review only of 'amount determinations' " and that, "statutory and constitutional challenges to the Secretary's administration of Part B of the Medicare program" and "challenges to the validity of the Secretary's instruction and regulations, are cognizable in courts of law").

access to the courts is essential to the decision of such questions." *Califano v. Sanders*, 430 U.S. 99, 109 (1977). Indeed, the Supreme Court has held that "challenges to the validity of the Secretary's instructions and regulations[] are cognizable in courts of law." *Michigan Academy*, 476 U.S. at 680. Accordingly, the Court will exercise federal question jurisdiction so as to provide Plaintiff with a forum for judicial review of its challenges to the validity of 42 C.F.R. §§ 405.980(a)(5) and 405.926(l).

## II.     *Article III Standing and Mootness*

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). "To invoke the jurisdiction of a federal court, a litigant must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id.* (citations omitted). Moreover, the federal litigants must have a continuing "personal stake in the outcome of the lawsuit." *Id.* at 478 (citations and internal quotation marks omitted.) "Therefore, under the mootness doctrine, 'if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party,' [the court] must dismiss the case, rather than issue an advisory opinion." *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)).

The Secretary asserts that Plaintiff does not have Article III standing to pursue its 225 benefit claims. (Def.'s Mem. at 13-14.) According to the Secretary, the 119 claims that were overturned in Plaintiff's favor during the appeals process are moot, and Plaintiff no longer has any possible injury resulting from those 119 claims that could be redressed by the Court. (*Id.* at 14-15.) Plaintiff responds that the Secretary's arguments fail to recognize that Plaintiff is not

only pursuing benefits claims, but is challenging the propriety of the reopenings, which is an issue that has not been resolved by the overturned claims.  (Pl.'s Mem. in Opp'n at 13.) Although the Secretary partially quotes *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) as stating that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy," (Def.'s Reply at 6), *Steel Co.* states, in full, that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Id.* (citations and internal quotation marks omitted).  Here, Plaintiff has claims that were not overturned in its favor, which, thus, constitute present adverse effects.

Nevertheless, the Secretary argues that the claims which were not overturned also fail to supply standing because Plaintiff cannot establish that those claims, i.e., the 88 "abandoned" claims and 18 untimely filed claims, caused an injury to Plaintiff that is fairly traceable to the Secretary.  (Def.'s Mem. at 15-16.)  The Court disagrees.  The facts in the cases cited by the Secretary in support of her position are distinguishable from the facts in the present case.  In *Parvati Corp. v. City of Oak Forest, Ill.*, 630 F.3d 512, 517 (7th Cir. 2010), the court found that the plaintiff's injury was not "fairly traceable to the conduct of the defendant."  However, there, the plaintiff's alleged injury was "the potential for preclusion" created by the plaintiff's decision to voluntarily dismiss some of its claims against the defendants, the court's entry of a final judgment on the merits, and the plaintiff's subsequent decision to refile its claims against the defendants.  *Id.*  Thus, there, the *Parvati* court found that the "procedural 'injury' " to the plaintiff was the result of the plaintiff's litigation strategy, rather than the defendants' alleged unlawful conduct.  *Id.* at 517-18.  Similarly, in *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70-71 (E.D.N.Y. 2006), the court concluded that the

plaintiff's alleged injury of a "substantial reduction in business . . . following the [defendants'] termination of the plaintiffs' supply of . . . cosmetics," was "the result of the plaintiffs' poor business judgment in rejecting the [defendants'] offer of an exclusive dealing arrangement."

By contrast, Plaintiff is not asserting an injury resulting from its decision to abandon the administrative appeal of certain claims, or the untimely filing of other claims. Instead, Plaintiff asserts an injury resulting from the intermediary's alleged failure to abide by governing regulations when deciding to reopen the initial determinations, as well as from the regulations governing challenges to the reopening decisions. These alleged injuries were not caused by or traceable to Plaintiff's abandoning or untimely appealing the claims, nor did abandoning or untimely appealing those claims break the causal chain. Indeed, as discussed *supra*, and in the June 2012 Order, the continued pursuit of an administrative appeal of those claims would have proved futile in any event. *See* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.5 (3d ed. 2014) ("Failure to exhaust alternative means of redress need not break the causal chain. Standing is defeated only if it is concluded that the injury is so completely due to the plaintiff's own fault as to break the causal chain." (footnotes omitted)). Thus, Plaintiff's injury was not "primarily self-inflicted" so as to defeat standing. *Union Cosmetic*, 454 F. Supp. 2d at 71.

### III.    *Judgment on the Pleadings*

Having determined that the Court has subject matter jurisdiction over this case, the Court will now consider the merits of the Complaint. *See Young-Gibson v. Patel*, 476 F. App'x 482, 483 (2d Cir. 2012) ("[S]ubject matter jurisdiction is a 'threshold question that must be resolved . . . before proceeding to the merits.' " (quoting *Steel Co.*, 523 U.S. 88-89)). In deciding a motion for judgment on the pleadings pursuant to Rule 12(c), the court applies "the same standards that

are employed for dismissing a complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6)." *Ad–Hoc Comm. of Baruch Black & Hispanic Alumni Ass'n v. Bernard M. Baruch Coll.*, 835 F.2d 980, 982 (2d Cir. 1987); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

## A.   *Count II of the Complaint*

Count II of the Complaint asserts that, "[b]y failing to adhere to [her] own regulations governing [the] reopening of claims, the Secretary has deprived Plaintiff of property without due process of law in violation of Plaintiff's rights."[7] (Compl. ¶ 75.) It is alleged that Plaintiff "has

---

[7] At issue is the reopening regulation, 42 C.F.R. § 405.980(b), which provides in relevant part:
   A contractor may reopen an initial determination or redetermination on its own motion--
      (1) Within 1 year from the date of the initial determination or redetermination for any reason.
      (2) Within 4 years from the date of the initial determination or redetermination for good cause as defined in § 405.986.
Furthermore, section 405.986 provides in relevant part:
   Good cause may be established when –
      (1) There is new and material evidence that—
      (i) Was not available or known at the time of the determination or decision; and
      (ii) May result in a different conclusion; or
      (2) The evidence that was considered in making the determination or decision clearly shows on its face that an obvious error was made at the time of the determination or decision.
42 C.F.R. § 405.986(a).

a clear property interest in the administrative finality" of the initial determination that its claim will be paid under Medicare. (*Id.* ¶ 73.) However, the Secretary asserts that Count II should be dismissed because Plaintiff has no property interest in the administrative finality of the initial determination, which, according to the Secretary, may be reopened and result in a revised determination. (Def.'s Mem. at 23.) The Secretary further asserts that "[n]o authority supports Plaintiff's notion that a provider has a property interest in a supposed right to demand a showing of good cause for reopening." (*Id.*) The Secretary argues that a due process violation does not occur from an agency's violation of its own regulations unless the adoption of the particular regulations was required by the Constitution or by statute, and, here, the good cause reopening provision was not required by statute or the Constitution. (*Id.* at 25.) Moreover, the Secretary argues that, even if Plaintiff has a protected property interest, "the reopening regulations already give providers constitutionally sufficient process." (*Id.*)

Plaintiff argues that Count II should not be dismissed because it "has an unquestionable interest in the finality of its Medicare claims." (Pl.'s Mem. in Opp'n at 18.) Plaintiff asserts that the Secretary mischaracterizes Plaintiff's claim as seeking "an unqualified right to the finality of its initial determination," and, that, Plaintiff "argues only that it has a qualified right to finality- the qualifications placed on that right by the Secretary's own regulations." (*Id.* at 20.) Plaintiff cites *McCuin v. Sec. of Health and Human Servs.*, 817 F.2d 161 (1st Cir. 1987) in support of its contention that it has a property interest in a final determination that it is entitled to reimbursement for the services it provided. (Pl.'s Mem. in Opp'n at 19-20.) Moreover, Plaintiff argues that because it has a protected property interest in the finality of its claims, it is entitled to a pre-deprivation hearing, and that "the right to challenge the redetermination of a Medicare

claim is not equivalent to the right to challenge the fact that the claim was reopened and redetermined in the first place."  (Pl.'s Mem. in Opp'n at 20-21.)

*McCuin* provides some support for Plaintiff's position that it has a protected property interest in the finality of an initial determination.  The *McCuin* court recognized that the "lack of finality" resulting from the "reopening power claimed by the Secretary" is "a problem of substantive due process."  *McCuin*, 817 F.2d at 172.  In *McCuin*, however, the issue was one of interpretation, namely, whether a regulation which provided that a Medicare claim was "subject to 'reopening' by the Appeals Council," should be interpreted as allowing reopening only "upon the motion of a claimant," as asserted by the plaintiff in that case, or by the Appeals Council "upon its own initiative," as asserted by the Secretary.  *Id.* at 163.  Notably, the court did not identify the specific property right at issue, but, instead, focused on the potential procedural due process violation stemming from the lack of "fair notice of the Secretary's intention[ ]" to reopen claims.  *Id.* at 172.  Here, on the other hand, where the principal issue before the Court is whether Plaintiff has a protected property interest in the finality of the Secretary's initial determination, the Court is more appropriately guided by cases that analyze protected property rights.

The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const., Amend. V.  "The Fifth Amendment's guarantee of 'due process of law' includes a substantive component, which forbids the government from infringing on certain fundamental liberty interests . . . ."  *Campos v. I.N.S.*, 32 F. Supp. 2d 1337, 1347 (S.D.Fla. 1998); *accord Reno v. Flores*, 507 U.S. 292, 301-02 (1993).  The "[s]ubstantive due process analysis must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires [the court] to exercise the utmost care whenever [the court is] asked to break new ground in this field."  *Reno*, 507 U.S. at 302 (citation

and internal quotation marks omitted). "Recognized fundamental rights include those created by the Constitution, most rights enumerated in the Bill of Rights, and certain enumerated rights, such as the right to privacy." *Campos*, 32 F. Supp. 2d at 1347. Thus, "a government or state-created right is not a fundamental right implicating substantive due process." *Id.* Instead, "[g]overnment-created rights are protected by procedural, not substantive due process." *Id.*

In this case, Plaintiff does not assert in the Complaint, nor can it be said, that it has a fundamental right in the finality of an initial determination. Plaintiff's claimed right in the finality of an initial determination is more properly characterized as a government-created or statutorily-created property interest, if, in fact, it constitutes a property interest at all. Accordingly, any claimed substantive due process violation under the Fifth Amendment must fail.

The Court must next determine whether Plaintiff has stated a valid procedural due process claim under the Fifth Amendment. "To establish entitlement to due process protection under the Fifth Amendment, [Plaintiff] must first demonstrate [that it] possess[es] a property interest of constitutional dimension." *Furlong v. Shalala*, 156 F.3d 384, 393 (2d Cir. 1998). It is only when such a right is established that the Court may turn to a discussion of whether there has been a deprivation of that right without due process. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571-72 (1972). "In almost all cases, the existence of a federally protectable property right is an issue of law for the court." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999).

"Although the Constitution protects property interests, it does not create them." *Id.* Protected property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings

that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577. "[A]n abstract need or desire for benefits is not enough to establish a property interest." *Hotel Syracuse, Inc. v. Young*, 805 F. Supp. 1073, 1083 (N.D.N.Y. 1992). There must be "a legitimate claim of entitlement to it." *Roth*, 408 U.S. at 577. "In the Second Circuit, a plaintiff will be found to have a 'legitimate claim of entitlement to a particular benefit if, absent the alleged denial of due process, there is a certainty or a very strong likelihood that the benefit would have been granted.' " *Okolie v. Paikoff*, 589 F. Supp. 2d 204, 215-16 (E.D.N.Y. 2008) (quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 192 (2d Cir. 1994); *accord Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 59 (2d Cir. 1985)) (internal quotation marks omitted).

Based upon the foregoing, the Court must determine whether Plaintiff has a "legitimate claim of entitlement" to administrative finality of the initial determinations for the claims at issue. *Roth*, 408 U.S. at 577. The very fact that Plaintiff claims a "qualified" right to finality indicates that Plaintiff does not have a legitimate claim of entitlement to finality in the initial determination. Indeed, there can be no certainty in the finality of the initial determinations because the regulations provide the Secretary with the means to reopen and revise the initial determinations under a number of circumstances.[8] In other words, there is no certainty that the benefit of finality would have been granted to Plaintiff. This is demonstrated by the fact that, even absent the alleged denial of due process, i.e., even if the intermediary had not improperly reopened the initial determinations, there is no certainty or very strong likelihood that the initial determinations would have been final because the initial determinations were nevertheless

---

[8] Notably, an initial determination can be reopened within the first year for any reason. *See* 42 C.F.R. § 405.980(b)(1).

subject to reopening and revision under 42 C.F.R. § 405.980.[9]

It is noteworthy that Plaintiff potentially has a protected property interest at stake, viz. reimbursement under Medicare for certain medical services, which is protected by the Due Process Clause. *See Furlong*, 156 F.3d at 393 ("[P]rofessionals who provide services under a federal program such as Medicaid or Medicare have a property interest in reimbursement for their services at the duly promulgated reimbursement rate." (citation and internal quotation marks omitted)). Further, the Secretary asserts, and the Court agrees, that procedures are in place to protect Plaintiff's right to reimbursement. (*See* Def.'s Mem. at 25.) In the Complaint, however, rather than asserting a due process violation of Plaintiff's property right to reimbursement, Plaintiff essentially claims a violation of a property right in the procedures used to protect its right to reimbursement. The significance of this distinction was articulated by Justice Souter in *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748 (2005), when discussing a plaintiff's claimed protected property interest in police enforcement of a restraining order:

> "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250, 103 S. Ct. 1741, 75 L. Ed. 2d 813 (1983); *see also Doe v. District of Columbia*, 93 F.3d 861, 868 (C.A.D.C. 1996) (*per curiam*); *Doe v. Milwaukee County*, 903 F.2d 499, 502–503 (C.A.7 1990). . . . [T]his Court [has] observed that "[t]he categories of substance and procedure are distinct . . . . 'Property' cannot be defined by the procedures provided for its deprivation." *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 541, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).

*Id.* at 771 (Souter, J., concurring). Here, Plaintiff's property interest is in the reimbursement for services it provided, and the initial determination regarding its right to reimbursement is part of the procedures used to provide the benefit. Consequently, the Court cannot recognize a property

---

[9] Whereas the regulatory provision at issue in *McCuin* was unclear as to whether the Appeals Council had the ability to reopen upon its own initiative, here, the regulations are clear that the initial determinations may be reopened by the intermediary, consistent with the parameters established by the regulations.

right in the procedures used to protect Plaintiff's right to reimbursement, i.e., a right to procedural finality of a decision regarding reimbursement for services.

Moreover, the Secretary argues that "Plaintiff cannot bootstrap a due process violation from nothing more than an alleged violation by an agency of its own regulation." (Def.'s Mem. at 25.) The Second Circuit, in *Ali v. Mukasey*, 524 F.3d 145 (2d Cir. 2008), stated:

> "[W]hen a regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute, and the [agency] fails to adhere to it, the challenged . . . proceeding is invalid and a remand to the agency is required. . . . On the other hand, where an [agency] regulation does not affect fundamental rights derived from the Constitution or a federal statute, we believe it is best to invalidate a challenged proceeding only upon a showing of prejudice to the rights sought to be protected by the subject regulation."

*Id.* at 149 (quoting *Waldron v. INS*, 17 F.3d 511, 518 (2d Cir. 1993)). As previously discussed, Plaintiff has not alleged a violation of a fundamental right. Thus, Plaintiff must show that the alleged failure to adhere to the reopening regulations prejudiced its right to finality in the initial determinations. However, Plaintiff argues that this case is distinguishable from *Ali*, where the plaintiff was required to establish prejudice resulting from the agency's failure to adhere to its own regulations, (Pl.'s Mem. in Opp'n at 21-22 (citing *Ali*, 524 F.3d at 140)), and, importantly, the Complaint lacks any allegation that Plaintiff was prejudiced by the failure to adhere to the reopening regulations.

Although Plaintiff argues that it relied on the reopening regulations because of "the finality of claims that they afford," (*id.* at 21), that argument is unpersuasive considering that the finality of the initial determinations was never guaranteed under the reopening regulations. Moreover, as discussed *infra*, the regulations were promulgated to provide contractors with a means to reopen the initial determinations, rather than to provide Plaintiff with guidance or the benefit of finality. In addition, the Complaint lacks any allegation that Plaintiff relied to its

detriment on the reopening regulations or that it suffered substantially because of the intermediary's alleged failure to comply with the reopening regulations.  *See United States v. Caceres*, 440 U.S. 741, 752-53 (1979) ("Nor is this a case in which the Due Process Clause is implicated because an individual has reasonably relied on agency regulations promulgated for *his* guidance or benefit *and* has suffered substantially because of their violation by the agency." (emphasis added)).  Accordingly, Plaintiff's due process claims are dismissed.

**B.**     ***Count III of the Complaint***

Count III of the Complaint specifically alleges that the "Medicare Statute mandates that any individual dissatisfied with any initial determination made by the Secretary 'shall be entitled to reconsideration of the determination, . . . and a hearing thereon to the same extent as provided in section 405(b)' of the Social Security Act." (Compl. ¶ 77 (quoting 42 U.S.C. § 1395ff(b)(1)(A)).)  Section 405(b), in turn, requires the Commissioner of Social Security to provide a hearing for any individual who receives an unfavorable decision involving a determination of disability.  (Pl.'s Mem. in Opp'n at 23.)  Thus, the Complaint asserts, because an individual who is dissatisfied with a reopening decision involving claims for benefits under the Social Security Act has the right to an administrative appeal challenging the propriety of the reopening decision, an individual who is dissatisfied with a reopening decision involving claims for benefits under the Medicare Act should be entitled to "the equivalent ability to challenge [the] reopening decision." (Compl. ¶¶ 78, 79.)  Nevertheless, "the Secretary has expressly excluded [her] reopening decisions from review during the administrative hearing procedures applicable to Medicare appeals," and, as a result, it is alleged that the "Secretary's regulations . . . are contrary to Congress'[s] mandate . . . that the [S]ecretary provide to Medicare beneficiaries

and providers a right to appeal 'to the same extent' as is permitted under the Social Security Act." (*Id.* ¶¶ 80, 82.)

The thrust of Plaintiff's argument is that section 405(b) requires the Commissioner of Social Security to provide a hearing for any individual who receives an unfavorable decision involving a determination of disability, and that it is irrelevant that the term "reopening" is not mentioned in the statute because the phrase "decisions that involve a determination of disability" is broad enough to encompass reopening decisions. (Pl.'s Mem. in Opp'n at 23-24.)

The Secretary, on the other hand, argues that Counts III should be dismissed as failing to state a claim because (1) "contrary to Plaintiff's assumption, § 405(b) does not authorize a hearing on the lawfulness of the reopening of a Social Security benefit claim"; (2) "as with reopening of Social Security benefits claims, the reopening of Medicare benefit claims . . . exists only by grace of the Secretary"; and (3) "Congress expressly required the Secretary in 2003 to establish[ ] . . . specific regulations to govern the [Medicare] appeals process, distinct from the regulations for Social Security benefit claims." (Def.'s Mem. at 19-20 (citations and internal quotation marks omitted).)

Here, the ultimate issue is whether section 405(b) permits reconsideration of a reopening decision. As a preliminary matter, section 405(b) does not expressly authorize a hearing on the lawfulness of the reopening of a Social Security benefit claim. The question then is whether the Secretary's interpretation of the statute as not encompassing reopening decisions is entitled to deference. The Supreme Court's decision in *Your Home* indicates that it is.

In *Your Home*, the issue was whether an "intermediary's refusal to reopen a reimbursement determination" regarding cost reports was appealable to the Board under 42 C.F.R. § 405.1885(c), which provides "that '[j]urisdiction for reopening a determination . . . rests

exclusively with that administrative body that rendered the last determination or decision.' "
*Your Home*, 525 U.S. at 452 (quoting 42 C.F.R. § 405.1885(c)).  The Secretary asserted that

because "the intermediary [wa]s the body that rendered the last determination with respect to the

cost reports at issue," only the intermediary had jurisdiction to reopen, and the intermediary's

decision not to reopen was not reviewable by the Board.  *Id.* at 452-53.  The petitioner argued,

however, that because 42 U.S.C. § 1395oo(a)(1)(A)(i) permitted "a hearing before the Board

with respect to a cost report if the provider [wa]s dissatisfied with a final determination of . . . its

fiscal intermediary . . . as to the amount of total program reimbursement due the provider . . . for

the period covered by such report . . . .," the intermediary's "refusal to reopen a reimbursement

determination constitute[d] a separate final determination . . . as to the amount of total program

reimbursement due the provider," and, therefore, the provider was entitled to a hearing before the

Board under 42 U.S.C. § 1395*oo*(a)(1)(A)(i).  *Id.* at 453 (citation and internal quotation marks

omitted).

　　　　The Supreme Court agreed with the Secretary's interpretation of § 1395*oo*(a)(1)(A)(i),

i.e., that the phrase "final determination . . . . as to the amount of total program reimbursement

due the provider" did not embrace a refusal to reopen, and that the Secretary's interpretation was

"well within the bounds of reasonable interpretation," and "entitled to deference under *Chevron,*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 104 S. Ct. 2778, 81

L. Ed. 2d 694 (1984)."  *Id.* at 453.  In reaching its decision, the Supreme Court relied on its prior

determination in *Califano*, that section 205(g) of the Social Security Act, which provided, in

pertinent part, that "[a]ny individual, after any final decision of the Secretary made after a

hearing to which he was a party, . . . may obtain a review of such decision by a civil action," did

not authorize judicial review of a decision not to reopen.  *Id.* at 454 & n.2.  The Court in

*Califano* reasoned, *inter alia*, that "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action [we]re afforded by the Secretary's regulations and not by the Social Security Act." *Califano*, 430 U.S. at 108.

Thus, in *Your Home*, while a statute permitted a hearing to appeal a final determination regarding reimbursement, a regulation pointedly barred appeal of a decision denying a reopening. Importantly, in *Your Home*, the Supreme Court agreed with the Secretary that a final determination regarding the amount of program reimbursement did not encompass a refusal to reopen. A similar analysis applies here. While section 405(b) provides for a hearing where there is an unfavorable decision involving a determination of disability, the Secretary correctly asserts that a determination of disability does not include a decision to reopen.[10] Indeed, a decision to reopen is not a determination as to the amount of reimbursement provided under Medicare, but rather a decision to reconsider a determination as to the amount of reimbursement provided under Medicare. *Cf. Your Home*, 525 U.S. at 453 (agreeing with the Secretary's interpretation that "a refusal to reopen . . . is not a final determination . . . as to the amount, but rather the *refusal* to make a new determination." (internal quotation marks omitted)). Moreover, as previously noted, the Supreme Court recognized in *Califano* that "the opportunity to reopen final decisions and any hearing convened to determine the propriety of such action are afforded by the Secretary's regulations and not by the Social Security Act." *Califano*, 430 U.S. at 108. Thus, because section 405(b) does not authorize a hearing to appeal a decision to reopen, the

---

[10] The Secretary aptly points out that the Medicare Act contains its own specific provisions governing appeals, which provide that a hearing is available only with regard to initial determinations, and that initial determinations include only "questions of entitlement to Medicare benefits, coverage of services for program beneficiaries, and the amount of payment for covered services." (Def.'s Reply at 7 (citing 42 U.S.C. §§ 1395ff(a)(1), 1395ff(b)(1)(A)).) Thus, the Secretary argues that her construction of sections "1395ff(a)(1), (b)(1)(A) (and the cross-reference to § 405(b)) as providing for appeals of determinations on reimbursement claims" is reasonable. (*Id.*)

Secretary's regulations which bar the appeal of a decision to reopen are not contrary to section 405(b).  Accordingly, Count III is dismissed.

### C.    *Count IV of the Complaint*

Count IV alleges that 42 C.F.R. §§ 405.926(l) and 405.980(a)(5), which preclude administrative and judicial review of reopening decisions, are arbitrary and capricious.  (Compl. ¶ 84.)  In addition, Count IV alleges that "[t]he Secretary's failure to follow [her] own regulations regarding the reopening of Plaintiff's claims was contrary to law, [and] was arbitrary and capricious."  (*Id.* ¶ 85.)

As to Count IV's allegation that 42 C.F.R. §§ 405.926(l) and 405.980(a)(5) are arbitrary and capricious, the Secretary argues that "there is no legal basis" for Plaintiff's claim that "the reopening regulations are arbitrary and capricious under the APA because they improperly 'shield the Secretary's reopening decisions from judicial and administrative scrutiny.' " (Def.'s Mem. at 20 (quoting Compl. ¶ 84).)  Notably, Plaintiff does not provide any argument in opposition to dismissal of this allegation in Count IV.  Nevertheless, the Court agrees with the Secretary that the reopening regulations are not arbitrary and capricious.

As discussed *supra*, Congress delegated to the Secretary under 42 U.S.C. §§ 1395ff(a)(1), 1395ff(b)(1)(G), and 1395hh(a), the authority to "promulgate[ ] regulations to carry out the Medicare program, specifically concerning reopening claims."  *Morton*, 747 F. Supp. 2d at 1356. In these situations, where "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation.  Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Chevron*, 467 U.S. at 843-44.

When addressing the Secretary's interpretation of these regulations as barring provider challenges to reopenings based on lack of good cause in *Palomar Med. Ctr. v. Sebelius*, 693 F.3d 1151 (9th Cir. 2012), the Ninth Circuit held that "[t]here is nothing arbitrary or capricious about [the Secretary's] position" that "claim determinations are reopened and revised under the guidelines she established in the reopening regulations, [and] that those guidelines are enforced internally rather than through provider appeals." *Id.* at 1165. The court reasoned that the Secretary's position "reasonably avoids the inefficiencies" that would result from requiring the government to maintain "record[s] of the 'good cause' for the reopening[s]" and prevent a "[re]focus[ing] from the reasonableness and necessity of providing medical services to the strength of the [contractor's] grounds for reopening." *Id.* at 1161, 1165.

The history of the Medicare Recovery Audit Contractor ("RAC") program confirms that the reopening regulations are not arbitrary and capricious. Congress enacted the RAC program to "identify" and "recoup" overpayments to providers under the Medicare program. *Id.* at 1156 (citations and internal quotation marks omitted). In doing so, Congress relied primarily on the Secretary's expertise to implement the program. *Id.* at 1157. Significantly, "Congress did not require 'good cause' for RAC reopenings, . . . [n]or did Congress specify how any reopening conditions 'established by the Secretary in regulations' should be enforced." *Id.* at 1165. The reopening regulations were promulgated nearly contemporaneously with the commencement of the RAC demonstration project, and with "the goals of the RAC program" in mind. *Palomar*, 693 F.3d at 1162. "In light of the demonstration project's success, Congress made the RAC program a permanent part of the Medicare Integrity Program." *Id.* at 1157. Thus, it is clear, based upon the purpose of the RAC program, the broad discretion granted the Secretary to implement the RAC program, the promulgation of the reopening regulations to further the goals

of the RAC program, and Congress's subsequent endorsement of the RAC program, that 42 C.F.R. §§ 405.926(l) and 405.980(a)(5) are not arbitrary and capricious.

To the extent Count IV's allegation that the Secretary's failure to follow her regulations was arbitrary and capricious asserts a Due Process violation, that claim is dismissed, as discussed *supra*. In addition, the allegation that the Secretary's reopening of Plaintiff's claims without good cause was arbitrary and capricious must be dismissed in light of the Court's conclusion that 42 C.F.R. §§ 405.926(l) and 405.980(a)(5) are not unlawful or arbitrary and capricious. Namely, because 42 C.F.R. §§ 405.926(l) and 405.980(a)(5), which prohibit administrative and judicial review of reopening decisions have been found to be valid, this Court is precluded from reviewing the Secretary's reopening of Plaintiff's claims to determine whether the Secretary complied with the regulations' good cause requirements. Therefore, Count IV is dismissed.

**D.** *Count I of the Complaint*

Plaintiff's only remaining cause of action is Count I, which alleges that "the Secretary unlawfully reopened Plaintiff's claims" by failing to reopen according to the regulation's guidelines. (Compl. ¶¶ 65, 70.) However, the Court's conclusion, *supra*, that 42 C.F.R. §§ 405.926(l) and 405.980(a)(5) are not unlawful or arbitrary and capricious necessitates the dismissal of this claim as well. Namely, under 42 C.F.R. §§ 405.926(l) and 405.980(a)(5), the Court is precluded from reviewing the reopening decisions. Accordingly, the Secretary's motion for judgment on the pleadings is granted in its entirety.

*CONCLUSION*

For the foregoing reasons, the Secretary's motion for judgment on the pleadings is granted. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
         July 23, 2014

                                    _____/s/_____

                                    Denis R. Hurley
                                    Unites States Senior District Judge